Timothy E. FLEENER, Petitioner,

v.

Jack DUCKWORTH, Warden and Indiana Attorney General, Respondents.

No. S81–0286.

United States District Court, N.D. Indiana, South Bend Division.

March 28, 1983.

Timothy E. Fleener, pro se.

Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for respondents.

## MEMORANDUM and ORDER

SHARP, Chief Judge.

This cause comes before the Court on a petition for writ of habeas corpus under 28 U.S.C. § 2254. Fleener was charged by indictment in two counts for murder and felony murder, Ind.Code § 35–13–4–1(a)

(Burns 1975), for the 1977 stabbing of Harold Lewis in Evansville, Indiana. The murder count was dismissed prior to trial. After trial by jury, petitioner was convicted of felony murder. The state trial court imposed a sentence of life imprisonment on the felony murder count. On direct appeal to the Supreme Court of Indiana, a unanimous court affirmed the judgment of the trial court. *Fleener v. State of Indiana,* Ind., 412 N.E.2d 778 (1980), *rehearing denied,* (1981).

In his direct appeal to the Supreme Court of Indiana, Fleener raised the following issues:

1. Whether the trial court erred in admitting Fleener's confession.

2. Whether the trial court erred in admitting statements attributable to Fleener without proof of the corpus delicti of the crime of felony murder.

3. Whether the trial court erred in refusing Fleener's tendered instruction on lesser included offenses.

4. Whether the trial court erred in refusing to grant Fleener's motion for a new trial based on newly discovered evidence.

5. Whether the evidence was sufficient to support the verdict.

In his petition for writ of habeas corpus, Fleener raises the following issues:

1. Whether the admission of Fleener's confession was trial court error.

2. Whether the trial court committed prejudicial error in allowing statements attributable to Fleener admitted into evidence.

3. Whether the trial court committed reversible error in refusing to give Fleener's tendered instruction number 11.

4. Whether it was prejudicial error by refusing to grant Fleener a new trial on the basis of newly discovered evidence.

5. Whether the evidence was sufficient to support the verdict.

Petitioner has exhausted his available state court remedies, *per Duckworth v. Ser-*

*rano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) and *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The complete state court record has been filed and examined by this Court pursuant to *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

 It is a well established principle that evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *United States ex rel. Perry v. Mulligan,* 544 F.2d 674, 678 (3rd Cir.1976), *cert. denied,* 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). State court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Gillihan v. Rodriguez,* 551 F.2d 1182, 1192–93 (10th Cir.), *cert. denied,* 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111 (1977), cited in *Brinlee v. Crisp,* 608 F.2d 839, 850 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733. *See also, Davis v. Campbell,* 608 F.2d 317, 319 (8th Cir.1979). For a most recent application of these ideas, see *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982) and *U.S. ex rel. Garcia v. Lane,* 698 F.2d 900 (7th Cir.1983).

 Prior to his state trial, Petitioner filed a Motion to Suppress his confession. The state trial court conducted a hearing and overruled the motion. Examination of the evidence presented at the hearing shows sufficient probative evidence to support the trial court's finding. Petitioner was advised of the subject matter of the discussion by Detective Baggerly, and was told that he could have an attorney. (R. 403). Detective Baggerly read Petitioner his "Miranda rights" and then had Petitioner read the "Miranda rights" form. (R. 401). Petitioner then signed the form to indicate that he

understood his rights. (R. 402). On appeal and in his present application, Petitioner points out that he had previously been convicted as an accessory in another robbery trial. He argues that this experience made him aware that to make the statement to Detective Baggerly would implicate him as an accessory in the alleged murder. Therefore, and by his own admission, petitioner knew the consequences of the statements made to Detective Baggerly. His waiver of rights was knowingly and intelligently made.

█ Petitioner's only remaining contention relating to his Motion to Suppress is that he was induced to make the statement by promises that he would not be prosecuted. At the hearing on the Motion to Suppress, Petitioner testified as follows regarding the alleged inducement made to him by Detective Baggerly:

Q. What did he lead you to believe if you gave a statement?

A. He led me to believe that he could talk maybe to the prosecutor to where there would be no—nothing brought up against me in this case whatsoever.

Q. Is that the basis that you gave the statement that is attributable to you in this Courtroom?

A. It is. (R. 486).

Petitioner's own testimony contains the word "maybe" in reference to Detective Baggerly's talking with the prosecutor. His testimony does not reflect that any assurances were given in return for his implicating Jesse McCormick. Petitioner's allegations of inducement is not supported by the record. Detective Baggerly made no promises of leniency in exchange for the confession. Detective Baggerly testified twice that he told Petitioner that he did not know what would happen until the prosecutor got the case. (R. 422, 477).

On January 26, 1982 this Court ordered this case remanded to the Indiana state trial court for findings of fact regarding the possible application of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). On January 7, 1983, the state trial court filed such findings with this Court.

The three page findings proffered by Judge Miller, Special Judge of the Gibson Circuit Court, pursuant to this Court's remand order, show clearly that the petitioner was read his *Miranda* rights, that petitioner made no indication of any desire to remain silent nor of any desire to have counsel present, and that petitioner freely and voluntarily made a statement to Officer Baggerly that was reduced to writing and signed by the petitioner. Thus, this situation is not identical to that of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), wherein the petitioner expressed a desire to remain silent until afforded the benefit of counsel, and then later confessed to police after being questioned a second time outside the presence of counsel. *Accord, see United States ex rel. Kimes v. Greer,* 527 F.Supp. 307 (N.D.Ill. 1981).

█ An accused who has once asserted his right to remain silent may later waive that right. *United States v. Madison,* 689 F.2d 1300 (7th Cir.1982); *United States v. Boston,* 508 F.2d 1171 (2d Cir.1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). However, where the petitioner has never asserted either his right to remain silent or his right to counsel,[1] *Edwards v. Arizona* is inapplicable. *Shaffer v. Clusen,* 518 F.Supp. 963 (E.D. Wisc.1981); *see also Jacks v. Duckworth,* 651 F.2d 480, 483 (7th Cir.1981), *cert. denied,* 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982) (where petitioner failed to demand presence of counsel until end of taped statement to police, no *Edwards v. Arizona* problem). Accordingly, petitioner's arguments regarding the inadmissibility of his statement must fail.

---

1. *United States ex rel. Riley v. Franzen,* 653 F.2d 1153, 1158 (7th Cir.), *cert. denied,* 454 U.S. 1067, 102 S.Ct. 617, 70 L.Ed.2d 602 (1981) (dis-tinguishes between right to remain silent and right to counsel).

The only evidence for Petitioner's inducement argument comes from his own testimony. The State's witnesses adequately refuted Petitioner's allegation that he was compelled to confess by promises that he would not be indicted. Conflicts in evidence are questions for the trier of fact.

A federal habeas corpus court is to determine voluntariness under the "totality of the circumstances" standard. *Davis v. North Carolina*, 384 U.S. 737, 741–742, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966). The question to be asked is whether Petitioner's confession was "the product of an essentially free and unconstrained choice." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973); *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). As noted above, Petitioner was no stranger either to police stations or to police questioning. Upon a careful review of the entire record and consideration of the totality of the circumstances, it must therefore be concluded that Petitioner's confession was voluntary and its admission into evidence at his state criminal trial did not violate any of Petitioner's constitutional rights to fundamental fairness.

 Admission of evidence in a state criminal proceeding does not raise a federal question unless it can be shown that such admission rendered a defendant's trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Donnelly, supra; Mulligan, supra; Gillihan, supra; Brinlee, supra; Davis, supra.*

[7] Petitioner argues that the trial court erred when it admitted his confession and other statements attributed to him without independent proof of the corpus delicti, in this case by the underlying felony of robbery. Petitioner's argument to the Supreme Court of Indiana was predicated on Indiana case law that was disapproved by the high court. The law in Indiana concerning this is found in *Harrison v. State*, 269 Ind. 677, 382 N.E.2d 920 (1978), *cert. denied*, 441 U.S. 912, 99 S.Ct. 2010, 60 L.Ed.2d 384 (1979), which held that a confession is admissible in a felony murder case once the State has shown through independent evidence that the homicide committed in Indiana was one of violence under the circumstances from which one could draw the conclusion that it was criminal in nature. Ample evidence was presented to show that the victim, Harold Lewis, died as a result of stab wounds under violent circumstances, from which one could draw the conclusion that the homicide was criminal in nature. *See also, Jones v. State*, 253 Ind. 235, 252 N.E.2d 572 (1969), *cert. denied*, 431 U.S. 971, 97 S.Ct. 2934, 53 L.Ed.2d 1069 (1977).

Thus, the admission of Petitioner's confession and other statements attributable to him was not error, there was sufficient independent evidence to prove the corpus delicti of the crime charge, and Petitioner was not denied fundamental fairness.

 Petitioner asserts that the trial court refused to read a lesser included offense instruction, therefore denying him some unidentified right guaranteed by the Constitution of the United States. Fleener's tendered instruction included the following asserted lesser included offenses—second degree murder, voluntary manslaughter, involuntary manslaughter, robbery, theft, assault and battery with intent to commit a felony, and assault and battery. There are no lesser included homicides of felony murder in Indiana. *See, Rodriguez v. State*, Ind., 388 N.E.2d 493, 496 (1979). To warrant a lesser included offense instruction, the evidence would have to be such as would support a guilty verdict to the underlying felony without also supporting a finding that the murder was incidental to that felony. *See, Cade v. State*, 264 Ind. 569, 348 N.E.2d 394 (1976). The evidence in this case clearly establishes that the decedent victim was killed in the perpetration of a robbery. The only question the jury had to determine was whether Fleener was an accessory to the crime. There was no evidence from which it could have been reasonably found that Fleener was guilty of the robbery but not of the concomitant murder. The tendered instruction was not applicable to the evidence.

Generally speaking, matters concerning the giving of instructions are usually considered to be questions of state law, not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Chance v. Garrison,* 537 F.2d 1212 (4th Cir.1976). It is only where the reading of an instruction to a jury is so prejudicial as to constitute a denial of fundamental fairness and due process that a federal habeas corpus claim arises. 28 U.S.C. § 2254(a); *Henderson v. Kibbe, supra; United States ex rel. Smith v. Fogel,* 403 F.Supp. 104 (N.D.Ill.1975). The Supreme Court observed in *Henderson v. Kibbe, supra,* that:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process; *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, not merely whether . . . the instruction is undesirable erroneous or even universally condemned." *Id.,* at 146, 94 S.Ct., at 400.

(*Id.,* 97 S.Ct., at 1736–1737).

Our Court of Appeals in *United States ex rel. Swimley v. Nesbitt,* 608 F.2d 1130, 1132 (7th Cir.1979), stated that a federal habeas corpus court is limited in its search to error of constitutional magnitude. The court further stated that in those cases in which the United States Supreme Court has reviewed the instructions given in state criminal trials, it has confined its inquiry to determining whether the jury was properly instructed on the government's burden of proving every element of the crime charged beyond a reasonable doubt or other principles of justice so deeply rooted in tradition as to be ranked as fundamental. Moreover, one convicted of a crime in a state court has a particularly heavy burden in establishing a constitutional violation where he complains not that the state court gave an erroneous instruction but that it omitted to give a permissible instruction. *Id.,* 608 F.2d at 1132–33, citing *Henderson v. Kibbe,* 431 U.S. 145, 154–155, 97 S.Ct. 1730, 1736–1737, 52 L.Ed.2d 203 (1977).

Again, the Court of Appeals for the Seventh Circuit addressed the question concerning an omitted instruction in *United States ex rel. Peery v. Sielaff,* 615 F.2d 402 (7th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980).

> In general, however, the failure of the state court to instruct on a lesser included offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding. *James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976). *Cf. DeBerry v. Wolff,* 513 F.2d 1336, 1339 (8th Cir.1975); *Bonner v. Henderson,* 517 F.2d 135 (5th Cir.1975); *Grech v. Wainwright,* 492 F.2d 747 (5th Cir. 1974). *See also, United States ex rel. Waters v. Bensinger,* 507 F.2d 103, 105 (7th Cir.1974) ("instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues"). *Id.,* 615 F.2d at 404.

The court also stated that:

> In a habeas action the question is whether the petitioner alleges a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedures. *Id.*

*See also, United States ex rel. Cyburt v. Rowe,* 638 F.2d 1100, 1104 (7th Cir.1981).

The Fifth Circuit is in accord with these cases. In *Easter v. Estelle,* 609 F.2d 756, 758 (5th Cir.1980), the Court stated:

> The first part of Easter's claim is without merit because he fails to state a federal claim upon which federal habeas corpus relief may be granted. It is not enough for Easter to contend that he was deprived of due process because the trial judge failed to charge the jury on the law of criminally negligent homicide since it is a lesser included offense. . . . This court has previously held that a state

trial court judge's failure to instruct on a lesser included offense is not a federal constitutional matter. *Bonner v. Henderson,* 517 F.2d 135 (5th Cir.1975); *Grech v. Wainwright,* 492 F.2d 747 (5th Cir.1974); *Alligood v. Wainwright,* 440 F.2d 642 (5th Cir.1971). Therefore, we must find that Easter failed to state a federal claim upon which federal habeas corpus relief may be granted.

■ It is clear that a jury instruction concerning a lesser included offense would have been impermissible in this case. It was found not to be error by the Supreme Court of Indiana in *Fleener v. State, supra,* at p. 782. The failure of the state trial court judge to instruct on a lesser included offense is not a constitutional matter and it will not be considered in this federal habeas corpus proceeding. The omission in not instructing the jury on a lesser included offense is not inconsistent with the rudimentary demands of fair procedure. Petitioner has failed to state a federal claim upon which federal habeas corpus relief may be granted.

■ Petitioner asserts that he was entitled to a new trial by reason of newly discovered evidence. The claim of new evidence is supported by a deposition of Fleener's former cellmate, Alvin Hunley, which related that Fleener had told Hunley that his confession to Detective Baggerly was false and was given out of revenge for the purpose of implicating his co-defendant. Admittedly, Hunley's deposition was taken after trial, but the information contained therein and upon which Fleener seeks to rely, i.e., the purpose of his confession, was not newly discovered evidence. Neither Fleener nor Hunley testified at Fleener's trial. A defendant in possession of evidence, who fails to present the evidence at trial, cannot use such evidence as a basis for a new trial following an unfavorable verdict. The Supreme Court of Indiana found no error. *Fleener v. State, supra,* at p. 782.

■ Claim of newly discovered evidence is generally not grounds for relief in federal habeas corpus proceedings. *Mastrian v. McManus,* 554 F.2d 813 (8th Cir.1977), *cert.*

*denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099; *see also, DeMartino v. Weidenburner,* 616 F.2d 708 (3rd Cir.1980); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Tyler v. Wyrick,* 540 F.2d 921 (8th Cir.1976); *Kelly v. Ragen,* 129 F.2d 811 (7th Cir.1942). In addition, the evidence sought to be proffered was not newly discovered. Fleener's assertion in this regard is without merit.

■ Petitioner alleges that the state prosecution did not present sufficient evidence to the jury upon which the jury could have found him guilty of felony murder. Ind.Code § 35–13–4–1(a) (Burns 1975). The appropriate standard for review in a federal habeas corpus proceeding initiated by a state prisoner where insufficiency of the evidence is asserted is found in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126, which states as follows:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.,* 443 U.S. at 324, 99 S.Ct. at 2791.

In that decision, the Supreme Court also stated that a judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. *Id.,* at 323, 99 S.Ct. at 2791. The duty of the federal habeas corpus court is to appraise a claim to see if a constitutional error did occur. *Id.* Under the established standard, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Id.,* at 326, 99 S.Ct. at 2792. A feder-

al habeas court must view the evidence in the light most favorable to the prosecution. *Id.,* at 319, 99 S.Ct. at 2789. The standard enunciated by *Jackson* must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Id.,* at 324, fn. 16, 99 S.Ct. at 2792, fn. 16.

The record of evidence adduced at the state court trial, viewed in the light most favorable to the prosecution reveals the following.

Evansville Police Officer Keith Byrd testified that during routine patrol around 8:00 a.m. on May 18, 1977, he discovered a body in Sunset Park near the levee. (R. 138). He identified slides depicting the area around the levee, bloodstained rocks and grass, and the deceased with stab wounds in his body. (R. 140–168).

Marion Lewis identified a slide of the deceased as showing his brother, Harold Lewis. (R. 180).

Police Officer Ray Hamner testified that on May 18, 1977, he received a radio report to investigate the discovery of a body at the levee. (R. 181). He arrived on the scene at approximately 8:30 a.m. and found Mr. Lewis lying face down about three or four feet from the parking lot of the Waterworks area of the levee. (R. 182). He and other officers conducted a search of the area for physical evidence and traced drops of blood approximately 300′ to an area where more blood was concentrated than in any other area. Officer Hamner's opinion was that the initial stab wounds were inflicted on the south side of the levee nearest the water in a rocky area. (R. 182–184). It appeared that Mr. Lewis moved on his feet, dripping blood, to a grassy area where he fell down and lay for a period of time before moving to the place where his body was found. (R. 189–193). More slides were introduced showing blood stains as well as Mr. Lewis' automobile which was found at the scene. (R. 186–198).

A full-scale investigation was begun into the facts surrounding Mr. Lewis' death. Officer Hamner and others followed numerous leads, none of which proved to be fruitful. (Re. 202–203).

David Collins, an Evansville police officer testified that he participated peripherally in a homicide investigation near the levee at Sunset Park on May 18, 1977. He discovered State's Exhibit 1, a paring knife with a white plastic handle, at the scene. (R. 217–218). Officer Collins guarded the scene where the knife was found until an evidence technician, Bill Egan, arrived.

William Egan, an officer in the Crime Scene Technical Unit, testified that he took custody of the knife from Officer Collins. He turned it over to Officer Biederwolf and it was secured in the evidence locker of the Evansville Police Department Property Room under the supervision of the evidence technician. (R. 227–229).

The Petitioner's mother, Helen Fleener, identified Exhibit 1 as her knife. She had one knife like it in May of 1977, and she determined that the knife was missing from her home on a date she could not recall. (Re. 244–245). She only had one paring knife and was able to identify Exhibit 1 as her knife from "little scratch things" on the handle. (R. 247). Mrs. Fleener identified Petitioner as her son (R. 245), and stated that he was usually at her house several times a week. (R. 252).

Officer Ray Schapker of the Criminal Investigation Division testified that he found a buck knife in the area where the struggle took place and called an evidence technician to take photographs and custody of the knife. (R. 257, 261). Follow-up investigations were made pertaining to such things as cars and people seen in the area, anonymous phone calls, and calls where people identified themselves. (R. 267). Officer Schapker stated that he and other officers ran into "dead end leads." (R. 206).

A stipulated deposition of Officer John Althoff was admitted into evidence in which the officer stated that he ran tests on the knives found at the scene. The buck knife had hemoglobin present which indicated the possibility of blood. (R. 269). He found no hemoglobin present on the paring knife, and no readable fingerprints on either knife. (R. 270).

Earla May McCormick, estranged wife of Jesse McCormick, identified the Petitioner. (R. 316). She testified that two years prior to trial, her husband came to her apartment "holding his left side and there was blood on his shirt." (R. 318). The Petitioner, Tim Fleener, was with Jesse McCormick. (R. 318, 330–331). The incident occurred close to her birthday, which is in May, of 1977. (R. 324).

Gerald Bivens, who was an inmate of the Vanderburgh County Jail and Medaryville Honor Camp (R. 358), testified that he contacted Detective Baggerly on September 25, 1978 (R. 362) about the murder at the levee. (R. 363). Bivens testified, over objection, that Timothy Fleener and Jesse McCormick made statements to him pertaining to that murder while they were in Cell 23 of the Vanderburgh County Jail. (R. 364). Bivens had told McCormick that he (McCormick) did not have the heart to kill anybody. (R. 365). Petitioner told Bivens that McCormick had killed before. When Bivens asked who was killed, Petitioner told him "the man down at the levee, Harold Lewis." (R. 366). Bivens described the conversation as follows:

Fleener told me that him and McCormick were together and that they were— Fleener was driving and they went down on Waterworks Road and parked and McCormick got out and walked up to the levee. (R. 367).

\* \* \* \* \* \*

That they were planning on robbing the man, McCormick and Fleener was waiting in the car and McCormick went up there to rob him and when he did rob him, the man threatened to go to the police, Harold Lewis, and McCormick started stabbing him a number amount (sic) of times. (R. 367).

The following questions were then asked by the prosecutor and answered by Bivens as follows:

Q. Did Fleener state to you who, if anyone, was going to arrange to meet Lewis on the levee?

A. Yes.

Q. And who was that?

A. It was Fleener who was arranging to meet him on the levee.

Q. Did he state why?

A. No, he didn't—that they were going to rob him. (R. 368).

When asked what Fleener told him, Bivens continued with his narrative as follows:

That McCormick had robbed him and took a sum of money out of his front trouser pocket and that after they got the money, they went to a karate shop. First that night they went and drank and then they went and took karate lessons on the money or parts of the money that they had, him and McCormick. (R. 369).

Bivens stated the car that was driven was that of Petitioner. (R. 369). Fleener and McCormick had two knives, one a buck knife. (R. 370). Bivens testified that McCormick had sworn on a Bible that he killed Harold Lewis. (R. 377). McCormick told Bivens that Petitioner had set it up. (R. 379).

Dr. Albert Venables, the pathologist who conducted an autopsy on the body of Harold Lewis (R. 382–383) testified that Mr. Lewis had stab wounds on his body, left front, left rear, left arm, and the back of his head and neck. (R. 387). Death resulted from a wound which passed through the left ventricle of the heart. (R. 389).

Detective Gerald Baggerly testified that on approximately September 25, 1978, he took statements from Gerald Bivens, and then from Petitioner. (R. 399–400). Detective Baggerly advised Petitioner of his *Miranda* rights. (R. 401). He read the rights from a form, let Petitioner read his rights, and then Petitioner signed them. (R. 401). The rights form was admitted into evidence as Exhibit # 82–A. (R. 402). Detective Baggerly told Petitioner he could have an attorney and told him they were going to discuss a murder. (R. 403).

Over Petitioner's objection, Detective Baggerly testified regarding the statement given by Petitioner. He stated that Petitioner and Jesse McCormick were riding

around in Petitioner's car and began to discuss robbing someone. They went to the home of Petitioner's mother, and Petitioner took a white paring knife. He gave it to Jesse McCormick to pull a robbery (R. 404) because he didn't think Jesse had a knife on him. (R. 405). They rode around for awhile, and then went down around Sunset Park. They spotted a car sitting there with a person in it. McCormick told Petitioner that he knew the man and that the man carried a lot of money. Petitioner let McCormick out and drove around for awhile. (R. 405). Petitioner returned to Sunset Park and saw McCormick and the man talking, so he drove on around the riverside plaza. (R. 406). Petitioner drove back to Waterworks Road and Southland Drive, and McCormick was standing there with blood all over him. (R. 407). McCormick got in the car, an off-white Oldsmobile with Kentucky plates, and Petitioner asked him what happened. McCormick said the man put up a struggle and they had a fight. Petitioner asked if McCormick killed the man. McCormick replied that he didn't know if he was dead or not. (R. 407–408). McCormick told Petitioner he got a lot of money, three or four-hundred dollars and he showed the money to Petitioner. They proceeded to McCormick's home where he changed shirts. Mrs. McCormick was in the living room when they entered the apartment. (R. 408–409). The men went drinking at Dogtown, in the lower southwest corner of Vanderburgh County. The next day, they paid for courses at a karate school. (R. 409).

Detective Baggerly testified that the statement was reduced to writing and signed or initialed on each page by Petitioner. (R. 410). Petitioner's statement was entered into evidence as State's Exhibit 82–B. (R. 412). The witness identified Petitioner as the person from whom he took the statement. (R. 430).

█ After reviewing this evidence in the light most favorable to the prosecution, this Court must conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The Petitioner in the present case is not entitled to habeas corpus relief for the reason that upon the record evidence adduced at the state trial any rational trier of fact could have found proof of guilt beyond a reasonable doubt. Petitioner's claim of insufficient evidence does not provide a basis for relief in federal habeas corpus pursuant to 28 U.S.C. § 2254. Accordingly, there being no ground for granting the writ, the petition for writ of habeas corpus is hereby DENIED. SO ORDERED.