Michael WADE, Petitioner,

v.

Jack R. DUCKWORTH, and Indiana Attorney General, Respondents.

No. S 84–653.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 17, 1986.

the Indiana State Prison, in Michigan City, Indiana. The matter is now before this court on respondents' motion to dismiss, filed as part of their Return to Order to Show Cause. In accord with the dictates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court.

A careful examination of the underlying state court record and the opinion of the Supreme Court of Indiana, *Wade v. State*, 270 Ind. 549, 387 N.E.2d 1309 (1979), reveals that petitioner has exhausted his available state court remedies per 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Both sides having briefed their respective positions, this petition is now ripe for ruling.

Petitioner was convicted in a state court jury trial of Armed Robbery and of inflicting an injury in perpetration of robbery, for which he received an indeterminate sentence of life imprisonment. These convictions were unanimously affirmed on appeal by the Supreme Court of Indiana. Petitioner now brings this petition for a federal writ of habeas corpus.

Petitioner raises the following issues in this application for habeas relief:

1. Petitioner's Constitutional right to a speedy trial was denied by the actions of the State.

2. Petitioner's Constitutional right to due process and equal protection was denied when the court allowed into evidence a confession obtained thru (sic) promises of lenienty (sic).

Michael Wade, pro se.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by Michael Wade, an inmate incarcerated at

### I.

Petitioner's first issue states that he was denied his Sixth Amendment right to a speedy trial because of the actions of the State. Petitioner claims that the length in the delay of serving him the capias severely prejudiced his defense at trial. He further claims that the State has failed to show good cause in delaying the service of his capias and knew at all times where he was located and therefore could have

served the capias promptly after the information was filed.

The facts of this case as determined by the Supreme Court of Indiana are as follows:

The information against him was filed on July 8, 1976; however, he was not served with the capias until October 1977, as he was incarcerated in the Indiana State Prison in Michigan City.

Rule 4(C) provides:

*"Defendant discharged.* No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing *more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later ...."* (emphasis supplied.)

In the case at bar appellant was arrested on the charge on October 27, 1977, and was tried by jury on May 4, 1978. His incarceration from July, 1976, to October, 1977, was for a separate conviction and had no relationship to the charges in the present information. He was "held on recognizance" for this specific information only from October, 1977, through May 1978. Appellant therefore was not entitled to discharge under CR. 4(C). *Cooley v. State,* (1977) [172] Ind.App. [199], 360 N.E.2d 29.

*Wade v. State, supra* 387 N.E.2d at 1310.

The petitioner has not disputed these findings. Findings of fact must be given a presumption of correctness by federal reviewing courts. *Sumner v. Mata,* 449 U.S. 539, 543–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981); *Rose v. Duckworth,* 769 F.2d 402, 405 (7th Cir.1985); 28 U.S.C. § 2254(d).

The record in this case further reveals that petitioner filed a Motion for Discharge on October 21, 1977, in the Marion County Criminal Court, which indicated that as of October 8, 1977, he was aware of the information filed against him. The trial court denied petitioner's motion for discharge on December 21, 1977. Thereafter, petitioner

plead not guilty and requested an early trial. The court set the trial for February 2, 1978.

The petitioner requested a continuance of the trial date on January 30, 1978, stating inclement weather as the reason and he withdrew his previous request for a speedy trial. The court reset the trial for April 3, 1978. Petitioner requested a second continuance on March 9, 1978, stating a conflict in counsel's schedule. The motion was granted and the case was reset for trial on May 4, 1978. Petitioner's counsel moved for a third continuance on April 28, 1978, and the motion was denied.

Petitioner filed a notice of alibi with the court on February 13, 1978, listing two alibi witnesses. The alibi witnesses named in his notice of alibi were Rosie Scott and Jasper Rucker. Not one of the continuances requested for by the petitioner alleged that either or both of these witnesses were unavailable for any of the three trial dates. Petitioner's third request for continuance of the trial date, which was denied, alleged that he was seeking to find an additional witness, one Joyce Scott, who would be an alibi witness. At no time did petitioner file a notice of alibi naming Joyce Scott as an alibi witness. Petitioner renewed his motion concerning a continuance in order to locate Joyce Scott at the trial but did not present an argument to support his position.

The two witnesses petitioner named in his notice of alibi, Jasper Rucker and Rosie Scott, did not testify at the trial, for whatever tactical reasons may have existed. But at no time was it alleged that these witnesses were unavailable to testify at any of the three scheduled trial dates.

## II.

Petitioner has raised the issue of the violation of his Sixth Amendment right to a speedy trial. In his State appeal, petitioner alleged violations of his Sixth Amendment right and violations of the Indiana law under Rule 4(C). In this petition, he states only the Sixth Amendment claim. Petition-

er claims that the undue lengthy delay in bringing him to trial prejudiced his case and denied him his right to a speedy trial. He cites, correctly, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as the controlling law in the area of speedy trial violations.

■ In *Barker v. Wingo*, the Supreme Court of the United States has set forth four factors which the courts should use in determining whether a particular defendant has been deprived of his speedy trial right. Those four factors include: length of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.*, 92 S.Ct. at 2192.

The *Barker* Court held:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provide such an inquiry is necessarily dependent upon the peculiar circumstances of the case. *Id.*, 92 S.Ct. at 2192.

Petitioner argues that the facts in his case present such a triggering mechanism which requires further inquiry into the matter. He claims that the fifteen (15) month delay, from the time of the filing of the information against him until the serving of the capias, constituted prejudicial delay.

Once the length of delay has triggered the inquiry, the Court held that the other three factors to be considered are related and must be considered together with such other circumstances as may be relevant. *Id.*, 92 S.Ct. at 2193. The Court said:

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowed courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. *Id.*, 92 S.Ct. at 2192.

Petitioner asserts that the government has deliberately attempted to delay his trial in order to hamper his defense. He claims that the failure to serve him the capias immediately after the filing of the information against him constituted a deliberate attempt to hamper his defense since the State knew at all times where petitioner could be found. Petitioner further contends that his third request for a continuance based on his attempt to locate a witness was a valid reason and such request justifies further delay and should not be used against him in determining whether or not he was denied his Sixth Amendment right to a speedy trial.

The *Barker* Court stated the following with respect to the third factor to be considered:

We have already discussed the third factor, the defendant's responsibility to assert his right. Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivations, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. *Id.*, 92 S.Ct. at 2192.

In this case, petitioner requested a speedy trial at the time his Motion for Discharge was denied and he entered his plea of not guilty. However, petitioner also withdrew that request for speedy trial when he moved for a continuance of the original trial date. Petitioner did not thereafter request or assert his right to a speedy trial.

The fourth factor for consideration was set forth by the *Barker* Court as follows:

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.*, 92 S.Ct. at 2193.

The prejudice which this petitioner claims resulted from the lengthy delay was the inability to produce alibi witnesses and the unnecessary delay in serving the capias. Petitioner claims that the information was held in "secret" from him. There is no evidence in this record which supports that claim. There is nothing which indicates that the information was kept under seal or "secret" from the petitioner. In fact, petitioner somehow learned of this "secret" information pending against him and filed a motion to discharge the information. The record clearly reveals that the information was filed and pending but was not served on petitioner until October, 1977. Petitioner's argument asserts that the

State should have served him in order to expedite the matter securing his Sixth Amendment right to a speedy trial.

■ Looking to the facts in this case, this court must assess the amount of delay, the reasons for the delay and any resulting prejudice to the petitioner. This court having reviewed all of petitioner's claims and the record before it has determined that petitioner's claim of delay constituting fifteen (15) months consists of the time period from July, 1976, the filing of the information, until October, 1977, the serving of the capias, and does not include any of the pretrial incarceration relating to the charges in the information which was subsequently tried in May, 1978. Petitioner is correct in asserting that the period between the arrest and the indictment must be considered in evaluating a Speedy Trial Clause claim. *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982); *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).

There is nothing in this record to indicate the reason or reasons for the State's failure to serve petitioner the capias which would show a deliberate attempt to hamper his defense to the charges pending. The record reveals that in the State's Response in Opposition to Defendant's Motion for Discharge, the State contends that the petitioner had left the Court's jurisdiction, even involuntarily to go to prison, constituted the delay in his arrest, and that, pursuant to Indiana law C.R. 4(C), Indiana's implementation of the State and Federal constitutional right to a speedy trial, his right was not violated. There is nothing in the record which disputes this reason by the State for its delay in serving the capias upon the petitioner other than the petitioner's allegations.

■ The amount of time from the filing of the information on July 1976 until trial in May 1978, consists of about twenty-two (22) months. Petitioner asks this court to ignore the circumstances resulting in the subsequent delays in procuring his trial. Rather, he asks that this court consider

only the fifteen (15) month delay in serving him the capias as the determining factor which he claims violated his speedy trial right. This court must look to the circumstances and the facts in this case as a whole. The *Barker* Court reiterated its holding in *Beavers v. Haubert*, 198 U.S. 77, at 87, 25 S.Ct. 573, at 576, 49 L.Ed. 950 (1905), stating:

> The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

*Barker v. Wingo, supra* 92 S.Ct. at 2188. This petitioner would have this court preclude the interests of public justice by ignoring those facts which do not support petitioner's position.

Furthermore, petitioner's claim that he was unduly prejudiced by the delay has not been substantiated by the record in this case. He claims that he was precluded from presenting an alibi defense because he was denied a continuance in order to find an alibi witness. This court has already pointed out that petitioner filed a notice of alibi which named two witnesses. Neither of these witnesses were called to testify at the trial and no motion or objection was made asserting that these witnesses were not available to testify at trial. Petitioner's failure to present an alibi defense was not the result of an act of the State. At no time after the arrest, until petitioner moved for his third continuance to find a witness not before mentioned, did petitioner claim that he was unable to locate witnesses or present an alibi defense. The witness petitioner named in his continuance had not been named in any notice of alibi pursuant to Indiana law at any time.

There is nothing in the record which supports the petitioner's claim that he was precluded from presenting an alibi defense or that he was in any way harmed in the preparation of his defense. His mere allegations to the same are wholly insufficient to support his claim that his Sixth Amendment right was violated.

The twenty-two (22) month delay in bringing petitioner to trial, largely comprised of the fifteen (15) month delay in serving petitioner with the capias, did not violate petitioner's Sixth Amendment right. Petitioner did not show that the fifteen (15) month delay was attributable to some deliberate attempt on the part of the State to thwart his efforts to prepare a defense or that it hampered his defense. After his arrest, his arraignment was held, motions were heard, an evidentiary hearing was held, and a trial set for February, 1978. Subsequent delays were attributable to the petitioner's requests for continuances. For recent Seventh Circuit opinions, applying the *Barker* four factors, *see United States ex rel. Mitchell v. Fairman*, 750 F.2d 806 (7th Cir.1984); *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120 (7th Cir. 1984).

This court hereby concurs with Chief Justice Givan writing for the Supreme Court of Indiana when it found that petitioner has shown absolutely no prejudice by reason of the delay in serving him. Under such circumstances it cannot be said that petitioner's constitutional right to a speedy trial has been abridged.

III.

In his second issue, petitioner claims that his due process right and his right to equal protection were denied when the court admitted a confession into evidence which had been obtained through promises of leniency. Petitioner claims that the police promised not to charge him with any crimes arising out of the "clean-up" statement, if he made such a statement. He claims that the police further promised that the prosecutor's office would be notified that he (petitioner) cooperated.

Petitioner asserts that after a few interviews with the police he in fact gave a "clean-up" statement confessing to the "Market Basket Robbery" under the promise that he would not be charged with the crimes arising therefrom. It is the petitioner's argument that the subsequent filing of criminal charges and use of that

particular confession violated his constitutional rights. He claims that he was tricked into confessing and that he did not voluntarily waive his rights.

At petitioner's trial the State called Detective Robert C. Green who testified that he had taken a confession by the petitioner admitting to the crimes for which petitioner was charged. The trial court admitted the confession over the objection of defense counsel. Prior to the trial in this case, petitioner filed a motion to suppress the confession and the trial court held an evidentiary hearing.

■ After having heard the evidence concerning the matter, the trial court denied petitioner's motion to suppress. The Supreme Court of Indiana, on appeal, found that Detective Green orally advised petitioner of his rights, that petitioner read them back to Green from a form, and that Green and petitioner signed the waiver of rights form. *Wade v. State, supra* 387 N.E.2d at 1311. The Court also noted that the waiver form had been admitted into evidence. Based on the record before it, the Supreme Court of Indiana found that petitioner had voluntarily waived his rights. Findings of fact by State courts must be given a presumption of correctness by federal reviewing court. *Sumner v. Mata, supra; Rose v. Duckworth, supra.*

During the suppression hearing petitioner testified that Detective Green stated to him during an interview in the fall of 1975 that if petitioner gave a "clean-up" statement petitioner would not be charged for any armed robbery crimes that he "cleaned-up" at that time [1]. He testified that he met with the detective on three separate occasions. He testified that it was on the second and third occasions in which he was questioned concerning the "Market Basket" robbery. Petitioner testified that when he was informed during a third interview that a bullet recovered at the scene of the robbery had been ballistically identified as having been fired from

petitioner's gun and when he was confronted with the fact that Charles Humble was picked up on the charge that he would "cop" to the charges. He testified that he asked the detective if he would be charged for that robbery, and was informed that he would not be charged. He testified that he was not read his rights nor did he sign a waiver of rights form during the interview in which he confessed.

Detective Green also testified at the suppression hearing. The detective testified that he met with petitioner on three occasions, the first time briefly at the jail, at which time he told petitioner that he would like to talk to him further, and that petitioner should consult with his attorney.

He further testified that a second meeting took place at the Indianapolis Police Department (IPD) on January 19, 1976, concerning a "clean-up" statement of other robberies petitioner had committed. Detective Green testified that at that time, he told petitioner that petitioner would not be charged with other armed robberies petitioner admitted to, since he was already faced with an existing charge of armed robbery. The detective said that petitioner admitted to committing several other robberies.

During that interview, the detective asked petitioner about his involvement in the "Market Basket Robbery". When Detective Green confronted petitioner with the knowledge that a ballistic report evidenced that a bullet recovered from the scene of said robbery was fired from a gun belonging to the petitioner, petitioner denied committing the crime, but offered the name of a possible perpetrator. Detective Green testified that he did not make any promises to petitioner in regard to possible prosecution for the "Market Basket Robbery". He next testified that he made it clear to petitioner at that point that the promise not to prosecute pertained only to the other crimes, but that the "Market Basket Robbery" involved the inflicting of

---

**1.** The clean-up statement was in regard to other armed robberies which petitioner had committed and did not relate to the crime for which he was currently being held on.

injury, and that the possible sentence of life, or ten to twenty-five years could be imposed. He further stated that if petitioner had committed the "Market Basket robbery" it would be best for petitioner to talk to him about it and that "the Prosecutor's Staff would know that he had cooperated."

Detective Green testified that petitioner denied committing the crime, but stated that another individual (Humble) had borrowed petitioner's gun the night of the robbery.

Detective Green next testified that on Februry 7, 1976, he arrested Humble and confronted petitioner with the presence of Humble at the police station. He testified that after the confrontation with Humble, petitioner recanted and in the presence of himself and Sergeant Combs admitted committing the "Market Basket robbery". Detective Green testified that during the last interview on February 7, 1976, and prior to petitioner's confession that he again stated that petitioner would be charged with the Market Basket robbery. He also testified that prior to the confession he advised both petitioner and Humble of their constitutional rights and that petitioner signed the waiver of rights form after he (Detective Green) had so advised him of his rights.

 The issue of whether a defendant waived his Miranda rights "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived his rights delineated from the *Miranda* [2] case." *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Gorham v. Franzen*, 760 F.2d 786, 794 (7th Cir.1985). The fact of a knowing and voluntary waiver is to be determined from a review of the totality of the circumstances. *Id.*, at 794. The burden rests with the prosecution to show waiver by a preponderance of the evidence, *cf. Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972) (the government must prove by a preponderance of the evidence that a confession was voluntary), although the courts must presume that the defend-

ant did not waive his rights. *Gorham v. Franzen, supra.*

In this case, during the suppression hearing petitioner testified that during one interview he had been given his rights and that he fully understood those rights and that he waived those rights to "clean-up" several other robberies he had committed. Detective Green testified that he advised petitioner of his rights again on February 7, 1976, the date in question, and that petitioner stated that he understood his rights. The detective also testified that he believed petitioner understood his rights. The record reveals a waiver of rights form signed by both Detective Green and petitioner and it is dated February 7, 1976. Petitioner then confessed to committing the "Market Basket robbery."

 This court finds that there is sufficient evidence in the record to find that petitioner knowingly and voluntarily waived his rights.

 Petitioner's argument that he was "tricked" into confessing to the "Market Basket robbery" must also fail. His only evidence that he was promised that he would not be charged for the "Market Basket robbery" is his own testimony. The State's witness testified that he was not promised that he (petitioner) would not be charged with the crime but rather that the prosecutor's staff would be told that he (petitioner) cooperated. The State's witness had testified that petitioner was promised he would not be charged with crimes of armed robbery in a "clean-up" statement, but that the promise was not made as to the "Market Basket robbery" because that robbery involved inflicting an injury which carried a life sentence, or a ten to twenty-five year sentence. Conflicts of evidence are questions for the trier of fact. *Fleener v. Duckworth*, 559 F.Supp. 1322, 1326 (N.D.Ind.1983). Petitioner's argument that he was "tricked" or induced to confess through promises of leniency, particularly that he would not be charged with

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the "Market Basket robbery", is not supported by the record. Petitioner's reliance on *McLallen v. Wyrick*, 498 F.Supp. 137 (W.D.Mo.1980) is misplaced as the facts in that case are significantly different from the facts in the case presently before the court. In the *McLallen* case the disrict court found that the prosecutor had made statements to the defendant which induced the defendant to confess. Here, the detective told petitioner that he would let the prosecutor's staff know that petitioner had cooperated.

Upon a careful review of the record and consideration of the totality of the circumstances, it must therefore be concluded that petitioner's confession was voluntary and its admission into evidence did not violate any of petitioner's constitutional rights.

Petitioner alleges in his statement of facts that his confession was obtained when his counsel was not present. He later made a bald assertion in his Traverse, that if they (police) would have qualified their intentions, this defendant would not have waived his right to an attorney at the time of questioning. There is nothing in this record which indicates that petitioner requested his attorney during any of his "clean-up" statements or that he requested his attorney at the time he confessed to the "Market Basket robbery." The facts in this case are distinguishable from those in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards v. Arizona* is not applicable to this case. *Fleener v. Duckworth, supra. Also see, White v. Finkbeiner*, 753 F.2d 540 (7th Cir.1985) for a discussion of the retroactive application of *Edwards*.

### IV.

Petitioner has requested the appointment of counsel. Petitioner has prosecuted this action with the help of a very capable and experienced lay legal assistant[3] and has presented his issues clearly and intelligently.

There is no constitutinal right to appointed counsel in a civil case. *Thomas v. Pate*, 493 F.2d 151 (7th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). Rather, the decision whether to appoint counsel in a case rests within the sound discretion of the court. *McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979). When considering motions for appointed counsel, this court is guided by the standards set forth in *Maclin v. Freake*, 650 F.2d 885 (7th Cir.1981). These standards include, but are not necessarily limited to, such considerations as the legal and factual merits of the claim presented, the degree of complexity of the issues involved, and the movant's apparent physical and intellectual abilities to prosecute the action. *See also Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982). This court is also mindful of a point not often made in these matters, and that is that the operative word in 28 U.S.C. § 1915(d) is "request", not "appoint", i.e., "[t]he Court may request an attorney to represent any such person unable to employ counsel." *See* David Ashley Bagwell, "Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435, 443 (1982). *See also, Wolfolk v. Rivera*, 729 F.2d 1114 (7th Cir.1984); *Williams v. Duckworth*, 598 F.Supp. 9 (N.D.Ind.1983), *aff'd*, 749 F.2d 34 (7th Cir. 1984).

After reviewing the motion and the record before this court, this court finds that the legal and factual merits, and degree of complexity does not warrant the appointment of counsel. Further plaintiff has not shown any apparent physical or intellectual impairments which would ham-

---

**3.** Plaintiff's lay advocate is Joseph M. Kalady, a fellow inmate at the Indiana State Prison. It is the understanding of this court that Mr. Kalady holds a Master's degree in philosophy from De-Paul University, and worked for two Chicago Loop law firms prior to his incarceration. He has appeared before this court on numerous occasions in his capacity as lay advocate, and has consistently demonstrated a thorough understanding of the law of prisoner petitions in federal courts.

per his prosecution of this case or his investigation of this case. This court also notes with approval the generally good quality of plaintiff's pleadings, and the obvious care with which he has framed and argued the legal issues and interrogatories propounded.

## CONCLUSION

Accordingly, it is the order of this court for the foregoing reason that respondents' motion to dismiss be and is hereby **GRANTED;** writ is hereby **DENIED;** petition **DISMISSED.** SO ORDERED.